## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Angela Fox,                                    Case No. 1:23CV1881

        Plaintiff,

        -vs-                                    **JUDGE PAMELA A. BARKER**

Kia America, Inc.,

        Defendant.                         **MEMORANDUM OPINION & ORDER**

Currently pending are Defendant Kia America, Inc.'s (1) Motion to Dismiss Plaintiff's First Amended Complaint; and (2) Motion for Judicial Notice.  (Doc. Nos. 13, 14.)  Plaintiff Angela Fox filed a combined Brief in Opposition to both Motions on December 7, 2023, to which Defendant replied on December 21, 2023.  (Doc. Nos. 15, 16.)  For the following reasons, Defendant's Motion for Judicial Notice (Doc. No. 14) is granted to the limited extent set forth herein.  Defendant's Motion to Dismiss (Doc. No. 13) is granted.

### I.      Factual Allegations

The Amended Complaint contain the following factual allegations.  (Doc. No. 12.)

On August 29, 2022, Plaintiff Angela Fox (hereinafter "Plaintiff" or "Fox") was severely injured when her vehicle collided with a 2021 or 2022 Kia Sportage. [1]  (*Id*. at ¶ 5, 37.)  The Kia Sportage involved in this collision had been stolen in Lakewood, Ohio.  (*Id*. at ¶¶ 15, 17, 20.)  The driver of the stolen Kia Sportage was attempting to flee from police when he collided with Plaintiff's

---

[1] It is unclear whether the vehicle that collided with Plaintiff's vehicle on August 29, 2022 was a 2021 Kia Sportage or a 2022 Kia Sportage.  In Paragraph 5 of the Amended Complaint, Plaintiff alleges that the Kia Sportage at issue was a"2021 Kia Sportage automobile." (*Id*. at ¶ 5.) In subsequent Paragraphs, however, Plaintiff refers to this vehicle as a "2022 Kia Sportage." (*Id*. at ¶¶ 37, 45.)

vehicle in East Cleveland, Ohio.  (*Id*. at ¶ 20.)  Plaintiff sustained severe, catastrophic injuries as a result of this collision.  (*Id*. at ¶ 5.)

As set forth in more detail below, Plaintiff alleges that her injuries are the "direct and proximate result of Defendant's defective design and manufacture of" the 2021 or 2022 Kia Sportage automobile. (*Id*.) Specifically, Plaintiff alleges that Defendant Kia America, Inc. (hereinafter "Defendant" or "Kia") failed to install certain "industry-standard anti-theft devices" into "most of its vehicles sold in the United States from approximately 2010 through 2021," including the Kia Sportage involved in the accident that injured Plaintiff.  (*Id*. at ¶¶ 5, 12.)  Plaintiff alleges that Defendant's failure to install such anti-theft devices "opened the floodgates to vehicle theft, crime sprees, reckless driving, and public harm," including the specific harm suffered by Plaintiff because of the collision on August 29, 2022.  (*Id*. at ¶ 12.)

A.      **Regulatory Anti-Theft Measures for Car Manufacturers**

Pursuant to its statutory authority, the National Highway Traffic Safety Administration (hereinafter "NHTSA") promulgated numerous Federal Motor Vehicle Safety Standards ("FMVSS"). (*Id*. at ¶ 23.)  Among these standards, FMVSS 11414 (located at 49 C.F.R. § 571.114) requires "minimum theft-protection standards for nearly all passenger vehicles in the United States." (*Id*.)  Of note, FMVSS 11414 provides, in relevant part:

S1. Scope. This standard specifies vehicle performance requirements intended to reduce the incident of crashes resulting from theft and accidental rollaway of motor vehicles.

S2. Purpose. The purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion.

S3. Application. This standard applies to all passenger cars, and to trucks, and multipurpose passenger vehicles with GVWR of 4,536 kilograms (10,000 pounds) or less. ***

2

\*\*\*

S5.1. Theft Protection. Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

> (a) The normal activation of the vehicle's engine or motor; and
> (b) Either steering, or forward self-mobility, of the vehicle, or both.

\*\*\*

S5.2.2 Except as specified in S5.2.4, the vehicle must be designed such that the transmission or gear selection control cannot move from the "park" position, unless the key is in the starting system.

49 C.F.R. 571.114.  *See* Doc. No. 12 at ¶ 23.

According to Plaintiff, "[a] main motivation for creating FMVSS 114 was NHTSA's recognition 'that stolen cars constitute a major hazard to life and limb on the highways.  The evidence shows that stolen cars are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals.'" (Doc. No. 12 at ¶ 24) (quoting 33 Fed. Reg. 6,471).  To address this risk, Plaintiff alleges the NHTSA "decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed."  (*Id*. at ¶ 26) (quoting 71 Fed. Reg. 17752.) Plaintiff alleges that "[a]n engine immobilizer satisfies this requirement 'because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system.'"  (*Id*. at ¶ 25) (quoting NHTSA Interpretation GF005229-2 (Sept. 24, 2004)).

In response to FMVSS 114, and because of the growing problem of vehicle theft, auto manufacturers began installing passive vehicle immobilizers, "which were patented no later than 1993."  (*Id*. at ¶ 28.)  Subsequently, the European Union mandated that all new passenger cars from 1998 forward be equipped with an electronic engine immobilizer.  (*Id.* at ¶ 29.) "Similar mandates

3

soon followed in Australia, New Zealand, and Canada." (*Id.*) Various studies by the NHTSA, the Highway Loss Data Institute ("HLDI"), and the National Insurance Crime Bureau ("NICB") showed that the rate of vehicle thefts decreased, at least in part due to the advent of engine immobilizers. (*Id.* at ¶¶ 32-35.)

Plaintiff alleges that Kia nonetheless "failed to install vehicle immobilizers in most of their cars sold in the United States despite installing such technology in vehicles produced and sold in the European and Canadian markets." (*Id.* at ¶ 10.) In a 2021 study, the HLDI found that "'Kia ha[s] lagged behind other manufacturers in equipping [its] vehicles with standard passive immobilizers'" and that "'[t]his lack of an immobilizer has made many … Kia vehicles vulnerable to theft.'" (*Id.* at ¶ 36) (quoting "Hyundai and Kia theft losses," Highway Loss Data Institute, Vol. 38, No. 28: Dec. 2021). Plaintiff alleges that, "[d]espite decades of research and findings that immobilizers significantly reduced vehicle theft and the consequential public safety risks," Kia "continued to fail to install immobilizers on all of its passenger vehicles, including the [] Kia Sportage involved in Plaintiff's August 29, 2022 accident." (*Id.* at ¶ 37.)

**B.    The "Kia Boyz" Viral TikTok Challenge**

In or around 2020, a group of teenagers in Milwaukee, Wisconsin, who dubbed themselves the "Kia Boyz" "discovered the security defects in Kia's automobiles and began to publicize precisely how to take advantage of Defendant's theft prone vehicles and steal one in seconds." (*Id.* at ¶ 38.) The Kia Boyz discovered the following specific security defects in certain Kia vehicles:

> 39.  First, the thieves recognized that the vast majority of Kia vehicles on the road do not have an engine immobilizer. The thieves are easily able to identify the theft prone vehicles because, upon information and belief, each Kia vehicle sold with a traditional "insert-and-turn" key ignition system, as opposed to a "push-to-start" ignition, lacks an immobilizer.

4

40. Second, the thieves discovered that these Kia vehicles do not contain alarms or sensors attached to the windows, which allows them to enter the vehicles without drawing attention to themselves.

41. Third, once they stealthily entered the vehicles, the thieves found that the steering columns in Defendant's theft prone vehicles do not contain adequate casing or a hardened collar, and are, therefore, easily pulled off.

42. Fourth, the thieves realized that the ignition lock assembly, which contains the lock cylinder, is easily disassembled with a screwdriver or with minimal force, thereby exposing the ignition switch.

43. Fifth, in a truly modern take on a decades old technique to steal a car, these thieves found that the ignition switch fits perfectly into the end of a USB cable, which has become ubiquitous in vehicles today, and can start with a simple twist. While the USB cable end is frequently used, any set of pliers works just as well. Once the ignition switch is turned and the vehicle starts, the steering lock is disengaged.

(*Id*. at ¶¶ 39-43.)

In 2021, videos demonstrating "the ease by which Kia vehicles could be stolen" were posted both on YouTube and in a viral TikTok challenge.  (*Id*. at ¶ 14.)  As a result, by August 2022, several Midwest cities, including Cleveland, experienced a dramatic increase in Kia motor thefts.  (*Id*. at ¶ 14, 15, 16.)  Indeed, "[i]n Lakewood, Ohio, where the Kia Sportage involved in Plaintiff's accident was stolen, the City of Lakewood experience[d] an almost 100% increase in stolen vehicles in 2022," largely due to vehicles (such as Kia vehicles) that were manufactured without standard anti-theft devices.  (*Id*. at ¶ 15.)

Plaintiff alleges that this increase in car thefts resulted in "substantial decrease in public safety."  (*Id*. at ¶ 20.)  This was because "the viral 'Kia challenge' typically involves joyriding and then abandoning the stolen vehicles."  (*Id*. at ¶ 21.)  Plaintiff alleges that "[t]here is an inextricable link between preventing vehicle theft and protecting public safety" and that "[m]aking sure cars are

not easy to steal both protects property and protects the public by keeping dangerous drivers in stolen vehicles off the road." (*Id*. at ¶ 7.)

    **C.**    **Alleged Defective Design Flaws in the Kia Sportage Involved in Plaintiff's Accident**

Plaintiff identifies several specific alleged design flaws in Kia's passenger vehicles, including the Kia Sportage involved in Plaintiff's August 29, 2022 accident.  Plaintiff first alleges that Kia "ignored the NHTSA's guidance and installed unsecure, flimsy plastic steering columns in its vehicles." (*Id*. at ¶ 48.)  Plaintiff alleges that these "flimsy steering columns" are "easily torn apart, allowing a thief to quickly and easily access the ignition assembly and start the vehicle." (*Id*. at ¶ 49.)

Plaintiff next alleges that Kia's design and manufacture of its ignition lock assembly is defective because it "does not have a locking mechanism and can be easily removed with minimal force." (*Id*. at ¶¶ 6, 50.)  Kia failed to implement safeguards used by other auto manufacturers to protect ignition cylinders.[2]  (*Id*. at ¶ 57.)   As a result, "[a]fter a thief removes the steering column cover [in a Kia automobile] … the ignition cylinder is exposed." (*Id*.)  And "[o]nce the thief has access to the ignition cylinder, the cylinder's release is in plain sight and requires no special tools to be removed while preserving the ignition switch." (*Id*.)  "Once the cylinder is removed the intact ignition switch is exposed, and any set of pliers, a USB cable, or one's bare hands can rotate the switch to start the engine." (*Id*. at ¶ 59.)

---

[2]  Plaintiff alleges that one of the ways in which other car manufacturers have protected their ignition assemblies is "by placing the ignition cylinder behind the steering wheel." (*Id*. at ¶ 55.)  "This requires the entire steering wheel to be removed in order to access the cylinder, which is a difficult task that requires specific knowledge of how each vehicle's steering column and wheel is designed, takes considerable time, and is hard to accomplish surreptitiously." (*Id*.)  "Other manufacturers design the cylinder so that it can only be removed from the ignition assembly, thereby exposing the ignition switch, that will only engage if a hidden release mechanism (the 'pin,' which requires special curved tools), is engaged." (*Id*. at ¶ 56.) Additionally, "[o]ther manufacturers fully engrain the ignition cylinder within a metal housing, which can only be removed by drilling a hole into the cylinder and completely destroying the component." (*Id*.)  Plaintiff alleges that Kia failed to implement any of these measures.  (*Id*. at ¶ 57.)

Plaintiff also alleges, upon information and belief, that "the alarm system designed and installed into Kia's theft prone vehicles, including the Kia Sportage involved in Plaintiff's collision, is deficient because the alarm is not triggered when one or more of the windows are shattered, which is how many thieves enter the vehicle." (*Id*. at ¶ 70.) Plaintiff further alleges (upon information and belief) that Kia failed to install "low cost" alarm design features, such as pressure sensors and/or shock sensors. (*Id*. at ¶¶ 64-67, 71.) Rather, "the theft prone Kia was equipped with a basic door alarm system, which allowed the thief to enter the vehicle by smashing a window and climbing inside and quickly and easily starting the vehicle." (*Id*. at ¶ 71.)

Plaintiff alleges that each of the above alleged design defects were present in the 2021 or 2022 Kia Sportage involved in the collision with Plaintiff on August 29, 2022. (*Id*. at ¶¶ 6, 48, 50, 51, 57, 70, 71.)

### D. Alleged Foreseeability of Harm

Plaintiff alleges that Kia "has known or should have known of the defects rendering its vehicles theft prone long before it sold the first with those design and manufacturing defects." (*Id*. at ¶ 72.) Specifically, Kia was allegedly aware of the above design defects "through the following sources, including, but not limited to [Kia's] (1) presale testing and Safety Standards self-certification process for those vehicles; (2) analyses and usage of engine immobilizers in other vehicles manufactured by [Kia], its PMP petitions, and usage of engine immobilizers in similar vehicles manufactured by [] Kia and sold outside the U.S. market; (3) monitoring of vehicle thefts for vehicles manufactured by [Kia]; and (4) monitoring of customer complaints, dealership records, warranty claims, and replacement parts orders." (*Id*. at ¶ 73.) *See also Id*. at ¶¶ 74-78.

Plaintiff further alleges that, based upon "decades of research that established the danger that stolen vehicles presented to the general public and the effectiveness of engine immobilizers in reducing auto thefts," Kia knew, or should have known, that the above design defects "would lead to a rash of thefts of its vehicles throughout the United States and unreasonably endanger the safety of other motorists like the Plaintiff." (*Id*. at ¶ 46.)  More specifically, Plaintiff alleges that "[i]t was reasonably foreseeable to Defendant Kia that its vehicle would be stolen and operated recklessly by unauthorized drivers by taking advantage of the design defects in the vehicle." (*Id*. at ¶ 83.)

In sum, Plaintiff alleges that "[b]oth the manner in which [she] was injured and her injuries were foreseeable" given the "inextricable link between preventing vehicle theft and protecting public safety." (*Id*. at ¶¶ 5, 7.) Plaintiff thus alleges that she suffered severe, catastrophic injuries "[a]s a direct and proximate result of Defendant Kia's design and manufacture of its vehicles, including the Kia Sportage that injured Plaintiff, without industry-standard safety measures, such as an engine immobilizer, a hardened steering column, a less accessible ignition assembly, and a meaningful steering lock." (*Id*. at ¶ 90.)

## II.  Procedural History

On August 22, 2023, Plaintiff filed a Complaint against Kia in the Cuyahoga County Court of Common Pleas, asserting the following four state law claims: (1) common law absolute public nuisance; (2) common law qualified public nuisance; (3) negligence; and (4) product liability.  (Doc. No. 1-1.)  Kia removed the action to this Court on September 26, 2023 on the basis of diversity of citizenship.  (Doc. No. 1.)

Kia moved to dismiss Plaintiff's Complaint on October 3, 2023.  (Doc. No. 10.)  Shortly thereafter, on October 24, 2023, Plaintiff filed a First Amended Complaint.  (Doc. No. 12.)  In light

of the filing of the Amended Complaint, the Court denied Kia's Motion to Dismiss as moot.  *See* Non-Doc Order dated Oct. 25, 2023.

In her First Amended Complaint, Plaintiff alleges a sole claim under Ohio's product liability statute, Ohio Rev. Code § 2307.75(A).  (Doc. No. 12 at ¶¶ 79-90.)  Plaintiff seeks compensatory damages in excess of $5,000,000; punitive damages in excess of $10,000,000; pre- and post-judgment interest; and an award of reasonable attorney's fees, costs, and litigation expenses.  (*Id*. at p. 20.)

On November 7, 2023, Kia filed a Motion to Dismiss Plaintiff's Amended Complaint, and a Motion for Judicial Notice. (Doc. Nos. 13, 14.)  Plaintiff filed a combined Brief in Opposition to both Motions on December 7, 2023, to which Kia replied on December 21, 2023.  (Doc. Nos. 15, 16.)

### III.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court accepts Plaintiffs' factual allegations as true and construes the Complaint in the light most favorable to them.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

### A.    Motion for Judicial Notice (Doc. No. 14)

Kia first asks the Court to take judicial notice of a letter dated June 5, 2023 from NHTSA Acting Associate Administrator of Enforcement Cem Hatipoglu, Ph.D., to Attorney General for the State of California, Rob Bonta. (Doc. No. 14.) Dr. Hatipoglu's letter reads in relevant part that "NHTSA has closely followed the reports of increases in thefts of certain models of Hyundai and Kia vehicles since the initial emergence of the video trend on TikTok and other social media platforms" and that "NHTSA has worked closely with Hyundai and Kia to determine the causes contributing to the theft vulnerability …" (Doc. No. 14-1 at PageID# 244.) Importantly, it also reads as follows:

> At this time, NHTSA has not determined that this issue constitutes either a safety
> defect or noncompliance requiring a recall under the National Traffic and Motor

> Vehicle Safety Act, 49 U.S.C. Chapter 301. The Federal Motor Vehicle Safety Standard identified in your letter, FMVSS No. 114, does not require an engine immobilizer. *See* 49 C.F.R. § 571.114. Also, the test procedure specified in that standard does not contemplate actions taken by criminal actors to break open or remove part of the steering column and take out the ignition lock to start a vehicle. *See id.* § 571.114, S6. Here, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle.

(*Id*. at PageID# 245.) Kia maintains that this Court should take judicial notice of Dr. Hatipoglu's letter under Fed. R. Evid. 201(b), arguing that courts frequently take judicial notice of federal regulatory agency materials including a government agency's private letter decisions. (Doc. No. 14 at p. 2) (citing cases).

In response, Plaintiff argues that the Court should deny Kia's Motion because it "seeks to offer evidence regarding disputed facts through [D]r. Hatipoglu's letter." (Doc. No. 15 at p. 10.) Plaintiff argues that Kia intends to use this letter to establish that its "vehicle was objectively not defective in its design and manufacture, and that it conclusively complied with federal motor vehicle safety standards." (*Id*. at p. 11.) Plaintiff further asserts that Kia is improperly attempting "to offer the letter as evidence that the vehicle design and manufacture was not the proximate cause of Plaintiff's injuries." (*Id*.) Because both these facts are directly disputed, Plaintiff argues that judicial notice of Dr. Hatipoglu's letter under Rule 201(b) is not appropriate in the context of deciding Kia's Motion to Dismiss under Rule 12(b)(6). (*Id*.) Lastly, Plaintiff asserts that the facts asserted in Dr. Hatipoglu's letter cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," given that Kia itself is now offering to install upgraded anti-theft software on all its affected vehicles. (*Id.* at pp. 11-12.)

In its Reply Brief, Kia maintains that Plaintiff mischaracterizes the purpose for which it seeks judicial notice of Dr. Hatipoglu's letter. (Doc. No. 16 at pp. 6-7.) Kia asserts that it is not asking this

Court to take notice of this letter to "conclusively establish numerous issues" in this action.  (*Id*.)  Rather, Kia states that it "requests judicial notice only of NHTSA's position, stated in the June 5 letter, that the agency has 'not determined that this issue constitutes either a safety defect or noncompliance requiring a recall' and that [FMVSS] 114 'does not require immobilizers.'"  (*Id*. at p. 7.)  Kia argues that, because it cannot reasonably be questioned that NHTSA embraced the position in Dr. Hatipoglu's June 5, 2023 letter, the letter is an appropriate subject of judicial notice.  (*Id*.)

"Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under Rule 56." *Electronic Merchant Systems LLC v. Gaal*, 58 F 4th 877, 883 (6th Cir. 2023) (citing *Wysocki v. Int'l Bus. Mach. Corp*., 607 F.3d 1102, 1104 (6th Cir. 2010)). "However, a court may, in undertaking a 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Id*. (quoting *Golf Village North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)).

Fed. R. Evid. 201(b) governs judicial notice.  Pursuant to that Rule, courts may judicially notice a "fact that is not subject to reasonable dispute" because it is either "generally known" within the court's territorial jurisdiction, or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  *See also Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 579 (6th Cir. 2012) ("[O]nly facts that are 'not subject to reasonable dispute' may be judicially noticed").  *See also Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).  As Kia correctly notes, courts frequently take judicial notice of federal regulatory agency materials, including NHTSA documents.  *See, e.g., Sharp v. FCA US LLC*, 637 F.Supp.3d 454, 458-459 (E.D. Mich. 2022) (taking judicial notice of documents from "the official

website" of the NHTSA); *Gregorio v. Ford Motor Co*., 522 F.Supp.3d 264, fn 5 (E.D. Mich. 2021) taking judicial notice of NHTSA investigation report).

Judicial notice, however, is limited.  As the Sixth Circuit has explained, "a court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'"  *Platt v. Bd. of Comm'rs on Grievs. & Discipline of Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig*., 769 F.3d 455, 467 (6th Cir. 2014)).  In other words, a court may take judicial notice of the document's existence but cannot take judicial notice of the document's substance.  *Id.  See also Davis v. City of Clarksville*, 492 Fed. Appx. 572, 578 (6th Cir. 2012).

Here, Kia has attached a "Certificate of Authenticity" from the NHTSA that certifies that the copy of Dr. Hatipoglu's June 5, 2023 letter attached to Kia's Motion is authentic.  (Doc. No. 14-1 at PageID# 243.)  As it is an authentic NHTSA document, the Court will take judicial notice of the existence of Dr. Hatipoglu's June 5, 2023 letter.  However, the Court agrees with Plaintiff that a number of statements contained within Dr. Hatipoglu's June 5, 2023 letter are subject to reasonable dispute.  Most notably, Dr. Hatipoglu's letter appears to address the hotly contested issue of causation, stating that "the test procedure specified in [FMVSS 114] does not contemplate actions taken by criminal actors to break open or remove part of the steering column and take out the ignition lock to start a vehicle." (*Id*.)  Dr. Hatipoglu also represents that FMVSS 114 "does not require an engine immobilizer" and that the NHTSA has not determined that the lack of an engine immobilizer in certain Kia vehicles constitutes a "safety defect."  (*Id*.)  As set forth at length *supra*, Plaintiff strongly disputes these statements in Dr. Hatipoglu's letter and includes numerous allegations to the contrary in her Amended Complaint.

13

Accordingly, while the Court will take judicial notice of the existence of Dr. Hatipoglu's June 5, 2023 letter, it will not take judicial notice of the truth of any of the matters asserted therein. *See Platt*, 894 F.3d at 245. *See also In re Kia Hyundai Vehicle Theft Litigation*, 2023 WL 8126869 at * 4 (C.D. Cal. Nov. 15, 2023) (taking judicial notice of the existence of Dr. Hatipogulu's June 5, 2023 letter, but "not the truth of the matters asserted therein.") Thus, the Court grants Kia's Motion for Judicial Notice but only to the very limited extent set forth above.

### B. Motion to Dismiss

As noted above, Plaintiff's sole claim in this action is a product liability claim under Ohio Rev. Code § 2307.75. (Doc. No. 12 at ¶¶ 79-90.) Plaintiff alleges that "Defendant's vehicles, including the Kia Sportage that injured Plaintiff, were defective in their design and manufacture because the vehicles were produced without standard-industry safety measures that would have made the vehicles less vulnerable to theft and thereby, more dangerous." (*Id.* at ¶ 80.) Plaintiff alleges that Defendant's vehicles, including the Kia Sportage involved in Plaintiff's injury, were "defective in design as defined by Ohio Rev. Code § 2307.75(A)." (*Id.*) Plaintiff alleges that "it was reasonably foreseeable to Defendant Kia that its vehicle would be stolen and operated recklessly by unauthorized drivers" and, further, that she suffered severe personal injuries "as a direct and proximate result" of Kia's defective design and manufacture. (*Id.* at ¶¶ 83, 90.)

"Section 2307.75(A) defines when a product is defective in design or formulation, involving a balancing of foreseeable risks, *id.*, § 2307.75(B), and benefits, *id.* § 2307.75(C), associated with the design or formulation." *Rees v. W.M. Barr & Company, Inc.*, 736 Fed. Appx. 119, 124 (6th Cir.

14

2018).[3] Section 2307.73(A) further provides that a manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that "a defective aspect of the manufacturer's product … was a proximate cause of harm for which the claimant seeks to recover compensatory damages." Ohio Rev. Code § 2307.73(A)(2). Interpreting these statutes, Ohio courts have found that, to prevail on a design defect claim, a plaintiff must show that "(1) the product was defective; (2) the defect existed when the product left the defendants' control; and (3) the defect directly and proximately caused [her] injury." *Butts v. OMG, Inc*., 612 Fed. Appx 260, 262 (6th Cir. 2015). *See also Wilson v. ThyssenKrupp Elevator Corp.,* 2022 WL 1618292 at * 2 (S.D. Ohio May 10, 2022).

In its Motion to Dismiss, Kia argues that Plaintiff has failed to plausibly allege sufficient facts relating to the third of the above elements, i.e., causation. (Doc. No. 13.) Specifically, Kia maintains that Plaintiff's product liability claim is subject to dismissal because she fails to plausibly allege sufficient facts from which the Court could infer either factual or legal causation. (*Id.*) The Court will address each of these issues in turn, beginning with legal causation.

### 1. Legal Causation

Kia argues that Plaintiff's Amended Complaint should be dismissed for lack of proximate cause because "not one but several 'new and independent' criminal acts sever the causal connection with the Sportage's design and Plaintiff's injuries." (Doc. No. 13 at p. 6.) Citing several Ohio Supreme Court and Appellate Court cases, Kia maintains that a car thief's reckless driving is unforeseeable as a matter of Ohio law, thereby "foreclosing liability for conduct allegedly

---

[3] Where, as here, an action "was removed to federal court on the basis of diversity jurisdiction, we look to the substantive law of ... the forum state and apply federal procedural law." *May v. CitiMortgage, Inc.*, 648 Fed. Appx. 567, 571 (6th Cir. 2016) (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

contributing to the theft." (*Id*. at pp. 6-7.) Based on this authority, Kia argues that the theft of the Sportage at issue in the instant case and the thief's reckless driving supersede any prior act by Kia and break the chain of proximate cause as a matter of law. (*Id*. at p. 8.) Lastly, Kia argues that, if Plaintiff is suggesting that the thief in this case participated in the "Kia Boyz" challenge, that "would simply add one more criminal act between Kia's alleged conduct and Plaintiff's injury," especially given the "literally unprecedented" nature of that "social media phenomenon." (*Id*.)

In response, Plaintiff argues that Ohio law establishes that intervening criminal acts do not sever the causal connection where those criminal acts are foreseeable. (Doc. No. 15 at p. 12-13.) She maintains that she has sufficiently alleged that Kia's "failure to incorporate industry-standard anti-theft devices made its vehicles more vulnerable to theft and, thus, more dangerous." (*Id*. at p. 15.) Plaintiff asserts that it was therefore "conclusively foreseeable" that "a person would steal the vehicle … and cause injury to the public at large, including Plaintiff." (*Id*. at pp. 15-16.) Plaintiff further asserts that the Ohio cases cited by Kia are distinguishable because they did not involve an "auto manufacturer charged with the responsibility to incorporate industry-standard anti-theft devices into its vehicles." (*Id*. at p. 14.) Lastly, Plaintiff notes that, in a recent case involving liability stemming from Kia's failure to design and manufacture vehicles with appropriate anti-theft measures, a California district court denied a motion to dismiss filed by Kia based on its argument that the plaintiffs had failed to sufficiently plead causation. (*Id*. at pp. 14-15) (citing *In re Kia Hyundai Vehicle Theft Litigation*, 2023 WL 8126869 at * 4 (C.D. Cal. Nov. 15, 2023)).

In its Reply Brief, Kia asserts that Ohio courts have found fact questions on the issue of foreseeability of third parties' criminal conduct "only in exceptional circumstances not analogous to the allegations here." (Doc. No. 16 at p. 3.) Kia also argues that the California district court decision

is not applicable because it does not address Ohio law and does not relate to a plaintiff's claim for personal injuries allegedly resulting from a thief's reckless driving. (*Id*. at p. 5-6.) Kia maintains that Plaintiff's claim is foreclosed by the consistent decisions of Ohio courts that, while the theft of a vehicle may be anticipatable under certain circumstances, the subsequent use of that vehicle to injure a third party is not. (*Id.* at p. 6.)

As noted above, a plaintiff asserting a products liability claim under Ohio law must establish that the "alleged defective product proximately caused [her] injury." *Roberts v. RMB Ents., Inc*., 967 N.E.2d 1263, 1274-1275 (Ohio App. 12th Dist. 2011) ("In any product-liability case, … a plaintiff must prove that the alleged defective product proximately caused his injury."). *See also R.H. Macy & Co., Inc. v. Otis Elevator Co*., 554 N.E.2d 1313, 1316 (Ohio 1990); *Eastman v. Stanley Works*, 907 N.E.2d 768, 780 (Ohio App. 10th Dist. 2009); *Tsirikos-Karapanos v. Ford Motor Company*, 99 N.E.3d 1203, fn 2 (Ohio App. 8th Dist. 2017); *Frost v. Evenflo Company, Inc.*, 2023 WL 8670063 at * 6 (Ohio App. 2nd Dist. Dec. 15, 2023).

"Proximate cause is a troublesome phrase. It has a particular meaning in the law but is difficult to define." *Corrigan v. E.W. Bohren Transport Co*., 408 F.2d 301, 303 (6th Cir. 1968) (applying Ohio law). "Proximate causation has been described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" *Queen City Terminals, Inc., v. General American Transportation Corp*., 653 N.E.2d 661, 670 (Ohio 1995) (quoting Prosser & Keeton, Law of Torts (5th ed. 1984) 263, Section 41). *See also R.H. Macy & Co., Inc*., 554 N.E.2d at 1316; *Frost*, 2023 WL 8670063 at * 6. Or, stated more precisely, the rule of proximate cause "requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case

17

might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act." *Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964).

"It is well accepted that two factors can combine to produce damage or illness, each being considered a proximate cause of the injury." *Czarney v. Porter*, 853 N.E.2d 692, 694 (Ohio App. 8th Dist. 2006) (citing *Johnson v. Pohlman*, 833 N.E.2d 313, 320 (Ohio App. 8th Dist. 2005). "However, the causal connection between one defendant's act and the resulting damage may be broken by an intervening cause." *Id.* *See also R.H. Macy & Co., Inc.*, 554 N.E.2d at 1316; *Queen City Terminals, Inc.*, 653 N.E.2d at 670 (same). Indeed, "[w]here a force intervenes between the defendant's conduct and the plaintiff's injury, it may relieve the defendant of liability by severing the requisite causal connection." *American Winds Flight Academy v. Garmin International*, 2010 WL 3783136 at * 8 (N.D. Ohio Sept. 17, 2010) (citing *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1071-1072 (Ohio 1993)).

An intervening cause, however, "does not operate to sever the causal link if the alleged intervening cause was reasonably foreseeable by the one who is guilty of the negligence." *Johnson*, 833 N.E.2d at 321. *See also Noco Company v. OJ Commerce, LLC*, 35 F. 4th 475, 483 (6th Cir. 2022) (applying Ohio law, noting that "even if there is an intervening event, the defendant will still be liable if he could have reasonably foreseen the intervening event.") As the Ohio Supreme Court explained in *Cascone v. Herb Kay Co.*, 451 N.E.2d 815 (Ohio 1983):

> Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.

18

*Id*. at syllabus, ¶ 1.  *See also Leibreich*, 617 N.E.2d at 1071; *American Winds Flight Academy*; 2010 WL 3783136 at * 8.

The Ohio Supreme Court further explained that the test for whether or not an act constitutes an intervening cause is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone*, 451 N.E.2d at 819. *See also Queen City Terminals, Inc*. 653 N.E.2d at 671.  In this context, the word "independent" means "the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence."  *Queen City Terminals, Inc.,* 653 N.E.2d at 671.  *See also Leibreich*, 617 N.E.2d at 1072; *R.H. Macy & Co*., 554 N.E.2d at 1317.  "New" means that the second act of negligence could not have reasonably been foreseen.  *See Queen City Terminals, Inc*., 653 N.E.2d at 671; *Leibreich*, 617 N.E.2d at 1072; *R.H. Macy & Co*., 554 N.E.2d at 1317*.  See also Noco Company*, 35 F. 4th at 483 (applying Ohio law, noting that "[t]he acts of a third party that independently cause the plaintiff's harm are a superseding cause only if the defendant couldn't have foreseen it … But the act must be an 'efficient, independent, and self-producing cause of the injury' to break the causal chain.") (quoting *Smith v. Hess*, 108 N.E.3d 1266, 1272 (Ohio App. 2nd Dist. 2018)).

Applying these principles, and for the following reasons, the Court finds that Plaintiff has failed to plausibly allege that any alleged defect in the Kia Sportage that collided with her vehicle in August 2022 was the proximate cause of her injury.

Ohio courts have consistently found, as a matter of law, that the theft of a motor vehicle constitutes an intervening cause that breaks the chain of causation with respect to the car owner's liability for personal injuries arising from that theft.  This issue was first decided by the Ohio Supreme

19

Court in *Ross v. Nutt*, 203 N.E.2d 118 (Ohio 1964).  In that case, the defendant parked his car, knowing that "the ignition was not lockable."  *Id*. at 119.  Defendant "left the car, and while he was away the car was stolen and some 90 minutes later, while in possession of the thief, was involved in the accident which gave rise to" personal injuries to the plaintiffs.  *Id*.  At the time of the accident, a city ordinance was in effect prohibiting the leaving of an unattended automobile without locking the ignition and removing the key.  *Id*. at 119-120.  Plaintiffs sued defendant, contending that his failure to comply with the city ordinance constituted negligence which rendered him liable for plaintiffs' injuries.  *Id*. The trial court directed verdicts in favor of defendants at the conclusion of plaintiffs' evidence, and the state appellate court affirmed. *Id*.

On appeal, the Ohio Supreme Court first observed that "for an act to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act." *Id*. at 120.  The court then explained, in relevant part, as follows:

> To find that an injury was the natural and probable consequence of an act, it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act.  ***
>
> This brings us to the issue in the instant cases. Could defendant reasonably have foreseen or anticipated that by leaving his key in his car that it would be stolen, and if stolen, would be operated in a negligent manner so as to cause injury to a member of the public?
>
> The mere statement of the question shows that to hold defendant liable would require him to have anticipated not one but two probable consequences as a result of his leaving his key in his car. He must have foreseen, first, that his car would be stolen, and, second, that the thief would operate the car in such a negligent manner as to cause an injury to some member of the public.

*Id*.  After discussing statistics regarding auto thefts, the court concluded that "it can hardly be found that one could reasonably anticipate that his car would be stolen even if he left his key in his motor be vehicle." *Id*.  The court further found that "[e]ven if a person could anticipate that his car would

20

be stolen, he could not reasonably anticipate that such vehicle would be operated in such a manner as to cause an accident." *Id.*

Thus, the court held that "[t]he proximate cause of the injuries in the instant cases was the negligent act of the thief in the operation of the vehicle." *Id.* The court explained:

> [T]he chain of causation was broken by the negligence of the thief in operating the vehicle. In other words, there was an efficient intervening cause, a new and independent force which severed the chain of causation. It is said in *Clements v. Tashjoin*, 92 R.I. 308, 168 A.2d 472, 475:
>
> '* * * The negligence on his part, if any, was not a direct and proximate cause of her injury but was merely a condition or circumstance which did not operate to cause any injury to the plaintiff except for the intervening independent negligence of the thief. **Such negligence the defendant was not in law bound to foresee as a natural and probable consequence of his violation of the statute**.'

*Id.* at 120-121 (emphasis added). In sum, the court concluded, "it would be beyond the realm of reason to attach liability to an owner for acts of a nonpermissive user, a thief." *Id.* at 121.

Twenty years later, the Ohio Supreme Court reaffirmed this holding in *Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985). In that case, defendant Glenda Barnes parked her car in the lot of her brother's apartment complex and left the keys in the ignition and the door unlocked. *Id.* at 283. The car was subsequently stolen and involved in an accident with plaintiff Mark Pendrey. *Id.* Pendrey filed suit, seeking damages for personal injuries sustained in the accident. *Id.* The trial court granted summary judgment in Barnes' favor, which was later affirmed by the state appellate court. *Id.*

On appeal, the Ohio Supreme Court "reaffirm[ed] *Ross* …. [held] that the theft of a motor vehicle was a sufficient superseding cause to, as a matter of law, absolve [Barnes] from responsibility for [Pendrey's] injuries." *Id.* The court concluded that Barnes "may have foreseen the possibility of her car being stolen, but no action or inaction on her part could have induced negligent or reckless behavior on the part of the car thief once the car had already been taken." *Id.* at 284. Notably, the

21

court rejected Pendrey's reliance on statistical data regarding the prevalence of stolen cars causing accidents, as follows:

> Appellant also argues that statistical data accumulated by the United States Justice Department supports the proposition that stolen cars, many of which have had keys left in their ignitions, have a tendency to become involved in accidents. This argument, however, is better directed towards the legislature than the courts. The implications of, by judicial fiat, making every owner of an automobile an insurer for injuries to third parties which may be occasioned by the negligent or reckless acts of a car thief are unacceptable. We decline to adopt such proposition.
>
> As we noted in *Ross,* the acts of an intermeddler, after the car has been stolen, are a sufficient intervening or superseding cause to break the chain of causation with respect to the car's owner. We therefore find summary judgment to have been properly granted to appellee.

*Id*.

Ohio appellate courts have consistently applied and followed *Ross* and *Pendrey*. For example, in *Miles v. Cedar-Lee Chrysler-Plymouth*, 1978 WL 218347 (Ohio App. 8th Dist. April 28, 1978), Arlene Turbo delivered her vehicle to defendant Cedar-Lee Chrysler-Plymouth, an auto dealership, for repairs. An employee of defendant parked Ms. Turbo's vehicle on defendant's privately owned, fenced-in parking lot and left it unlocked with the keys in the ignition. *Id.* at * 1. Ms. Turbo's vehicle was later stolen and, while in the possession of the thief, involved in a collision with a vehicle operated by plaintiff. *Id*. at * 1-2. Plaintiff sued the defendant for personal injuries that she sustained in the collision. *Id.* As in *Ross*, there was a city ordinance in effect prohibiting the leaving of an automobile unattended with the keys in the ignition. *Id*. at * 2. The trial court granted summary in favor of defendant. *Id.* Relying on *Ross*, the state appellate court affirmed. *Id.*

Likewise, in *Tilton v. Austintown Motors, Inc*., 1997 WL 816526 (Ohio App. 7th Dist. Dec. 30, 1997), defendant Austintown Motors, Inc. ("Austintown") owned a new and used automobile dealership and was the owner of a Grand Cherokee Jeep. *Id*. at * 1. Austintown left the Jeep

unattended and unlocked in the dealership lot, with the keys in the ignition.  *Id*.  The Jeep was stolen

from Austintown's lot by defendant Eric Farr, who was spotted by the police and gave chase.  *Id*.

While Farr was fleeing from the police in the Grand Cherokee, a collision occurred between the Grand

Cherokee and an automobile being operated by plaintiff Donald Tilton.  *Id*.  Mr. Tilton's pregnant

wife was also in the vehicle at the time of the collision.  *Id*.  Both Mr. Tilton and his wife were

severely injured, and their infant was later delivered stillborn. *Id*. Plaintiffs filed a complaint for

personal injuries against Austintown, among others, arguing that it "should have foreseen or

reasonably anticipated that many persons would frequent the lot premises at various times of the day

and that an automobile could have been taken without its consent and could later have been involved

in a collision."  *Id*.

The trial court granted Austintown's motion for judgment on the pleadings.  The state

appellate court affirmed, reasoning as follows:

> **As a matter of law, any negligence on the part of appellee was superseded by the intervening act of theft committed by defendant, Eric G. Farr**.  The Ohio Supreme Court in *Pendrey v. Barnes* (1985) 18 Ohio St.3d 27, 479 N.E.2d 283, held that the theft of an automobile is a sufficient superseding cause **as a matter of law**, to absolve an owner's liability.
>
> The concept of superseding cause makes the issue of appellee's alleged negligence moot and therefore, even construing the pleadings in a light most favorable to appellants as the non-moving parties, it is unnecessary to address whether or not appellee was negligent. We agree with *Brubaker v. Grzechowiak* (Oct. 31, 1986), Lucas App. No. L-86-100, unreported wherein the court, citing to *Ross v. Nutt* (1964), 177 Ohio St. 133, 203 N.E.2d 312, stated: "Even assuming negligence of the owner in leaving cars unattended, the chain of causation is broken by the intervening, independent actions of the thief."

*Id*. at * 2-3 (emphasis added).

Another state appellate court reached a similar conclusion in *Bugaj v. Nationwide Ins*., 2009

WL 2678938 (Ohio App. 6th Dist. Aug. 28, 2009).  In that case, plaintiff was injured when the car

he was operating collided with a vehicle that had been stolen from defendant Amanda Leffler after she left her car running and unlocked on the street.  *Id*. at *1.  The trial court granted summary judgment to defendant.  The state appellate court affirmed, concluding that "the application of *Pendrey* and *Ross* are sufficient to find that [defendant] was not negligent as a matter of law."  *Id.* at *2.  Finally, and more recently, in *Lagowski v. Shelly and Sands, Inc.,* 38 N.E.3d 456 (Ohio App. 7th Dist. 2015), the state appellate court found that the trial court properly dismissed plaintiff's complaint on the pleadings based on *Pendrey* where a thief stole a bulldozer from the defendant's construction site and used it to destroy plaintiff's residence.  That court remarked that "*Tilton* and *Pendrey* establish the principle that the theft of a motor vehicle, even when the keys are left in the ignition by the owner, is an intervening superseding cause breaking the chain of proximate cause in a negligence case."  *Id*. at 459.

Considering this unbroken line of authority, the Court finds that Plaintiff's defective design claim is subject to dismissal because, as a matter of law, the theft and subsequent reckless operation of the Kia Sportage involved in Plaintiff's accident constitute an intervening, superseding cause that breaks the chain of causation with respect to Defendant Kia.  As discussed at length above, Ohio courts have consistently found that, when a defendant allegedly fails to protect against vehicle theft, the subsequent negligent operation of a stolen motor vehicle is not foreseeable.  *See Pendrey*, 479 N.E.2d at 283-284 ("In short, while the theft may have been anticipatable, the subsequent, negligent use of the vehicle to injure a third party was not.") (citing *Ross,* 203 N.E.2d at 118); *Tilton*, 1997 WL 816526 at * 3 (noting that "courts have refused to require defendants to have anticipated not one, but two probable consequences as a result of leaving automobiles [unprotected against theft]:  one, that the vehicle would be taken; and two, that it would then be operated negligently, causing injury to a

third person."). Moreover, Ohio courts have held generally that "[o]ne is permitted to assume that others will follow the law and exercise ordinary care." *McDougall v. Smith,* 944 N.E.2d 1218, 1220 (Ohio App. 3rd Dist. 2010) (citing *Hicks v. Prelipp,* 2004 WL 1293999 at *2 (Ohio App. 6th Dist. June 11, 2004)). "As a matter of law, one need not anticipate that another driver will violate the law and that a collision will occur. Thus, such a collision is not foreseeable." *Id.*

The Court therefore finds that the intervening negligent act herein (i.e., the reckless operation of the stolen Kia Sportage) is both "new and independent" for purposes of Ohio law. As discussed above, in this context, the term "new" means "that the second act of negligence could not reasonably have been foreseen." *See Queen City Terminals, Inc*., 653 N.E.2d at 671; *Leibreich*, 617 N.E.2d at 1072; *R.H. Macy & Co*., 554 N.E.2d at 1317. As set forth at length above, Ohio courts have expressly found that a thief's reckless operation of a stolen vehicle is not reasonably foreseeable as a matter of law. Thus, the reckless operation of the stolen Kia Sportage that injured Plaintiff in this case constitutes a "new" intervening act of negligence.

The Court also finds that the reckless operation of the stolen Kia Sportage at issue is "independent." The term "independent" means "the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence." *Queen City Terminals, Inc.,* 653 N.E.2d at 671. *See also Leibreich,* 617 N.E.2d at 1072; *R.H. Macy & Co*., 554 N.E.2d at 1317. Here, assuming *arguendo* that a "connection or relationship of cause and effect" may exist between the failure of Kia to install anti-theft measures in the Kia Sportage at issue and the theft of that Sportage, Ohio courts have repeatedly declined to extend that cause and effect "connection or relationship" to the subsequent reckless operation of a stolen vehicle. *See Pendrey,* 479 N.E.2d at 283-284; *Ross,* 203 N.E.2d at 118; *Tilton*, 1997 WL 816526 at * 3; *Bugaj,* 2009 WL 2678938 at * 2;

25

*Miles,* 1978 WL 218347 at * 2.   Accordingly, the thief's reckless operation of the Kia Sportage that injured Plaintiff herein is both a new and independent intervening negligent act that breaks the causal connection with respect to Kia as a matter of Ohio law.

Plaintiff argues, however, that *Ross, Pendrey, Tilton*, and *Bugaj* are distinguishable because they "did not involve, as here, an auto manufacturer charged with the responsibility to incorporate industry-standard anti-theft measures into its vehicles." (Doc. No. 15 at p. 14.)  This argument is without merit.  In each of the Ohio cases noted above, the owners of the stolen vehicles were required by municipal ordinance to take certain measures to protect against vehicle theft, i.e., to not leave their vehicles attended with the key in the ignition.  Thus, the owners at issue in *Pendrey, Ross, Tilton* and *Bugaj* had a responsibility under municipal law to prevent vehicle theft that is analogous to Kia's alleged responsibility as an auto manufacturer to incorporate certain anti-theft measures into the Kia Sportage that injured Plaintiff.  Moreover, Plaintiff points to no language in any of the Ohio decisions discussed above that would support limiting those courts' holdings only to the liability of individual vehicle owners for personal injuries arising out vehicle thefts.  Indeed, as Kia correctly notes, both *Tilton* and *Miles* applied the central holdings of *Ross* and *Pendrey* to auto dealerships from whom vehicles were stolen after being left unattended and unlocked.  Accordingly, the Court rejects Plaintiff's argument that *Ross, Pendrey*, and their progeny are inapplicable because they did not involve the liability of an auto manufacturer such as Kia.

The Court also rejects Plaintiff's reliance on the Central District of California's recent decision in *In re: Kia Hyundai Theft Litigation*, 2023 WL 8126869 (C.D. Cal. Nov. 15, 2023).  In that multi-district litigation case, the plaintiffs (hereinafter "Subrogation Plaintiffs") are "insurance companies with policyholders who are insured under automobile policies for Vehicles that they

purchased or leased." *Id*. at fn 1. The Subrogation Plaintiffs allege that Defendants Kia and Hyundai knowingly manufactured and sold more than fourteen million Hyundai and Kia Vehicles that do not contain anti-theft equipment as required to comply with FMVSS No. 114. *Id*. at *1-2.  Subrogation Plaintiffs further allege that, because of Defendants' failure to include an anti-theft system in the Vehicles, the Subrogation Plaintiffs paid for covered damages sustained by their Insureds "as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property, in accordance with the terms and conditions of the insurance policies." *Id*.  Subrogation Plaintiffs assert claims under the laws of all fifty states for (1) violation of state consumer protection statutes, (2) breach of implied and express warranties, (3) fraud by omission and concealment, and (4) negligence. *Id.* at * 2.

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) on several grounds, including that Subrogation Plaintiffs had failed to "sufficiently plead any causal relationship between the thefts and the alleged defect in the insureds' Vehicles." *Id*. at *8.  In response, Subrogation Plaintiffs argued that the thefts were not intervening acts because "it was reasonably foreseeable that the insureds' Vehicles would be stolen" given Defendants' failure to install theft-prevention devices. *Id*.  Applying Ninth Circuit and California state law, the district court agreed with Subrogation Plaintiffs that "it was reasonably foreseeable that if Defendants did not comply with FMVSS 114 by having a theft-protective device in their Vehicles, people would steal the cars because a key was not needed." *Id*. Thus, although acknowledging that "actual causation in this case is a close question," the court concluded that "the fact that there was an intervening act by thieves is not fatal to the plaintiffs' claim on a Rule 12(b)(6) motion." *Id*. (quoting *Ileto v. Glock, Inc*., 349 F.3d 1191, 1208 (9th Cir. 2003)).

The Court finds that Plaintiff's reliance on *In re Kia, supra* is misplaced. As an initial matter, the Court notes that the decision in *In re Kia* is an unreported district court decision from outside this Circuit which does not address Ohio law. As such, it is not binding on this Court and is of limited applicability. Moreover, and most importantly, the issue in *In re Kia* was whether the Subrogation Plaintiffs had plausibly alleged a causal relationship between Defendants' failure to install certain anti-theft measures, and damages arising from the subsequent *theft* of the insured's Kia and Hyundai vehicles. Unlike the instant action, *In re Kia* did not involve a plaintiff's claim for personal injuries allegedly resulting from a thief's *reckless operation* of a stolen vehicle. This is an important distinction because, as discussed above, the Ohio Supreme Court found in *Pendrey* that, while the defendant "may have foreseen the possibility of her car being stolen, … no action or inaction on her part could have induced negligent or reckless behavior on the part of the car thief once the car had already been stolen." *Pendrey*, 479 N.E.2d at 284. Thus, "while the theft may have been anticipatable, the subsequent negligent use of the vehicle to injure a third party was not." *Id.* at 283-284. The Ohio Supreme Court concluded that the thief's negligent or reckless operation of the vehicle constituted "an efficient intervening cause, a new and independent force which severed the chain of causation." *Id.* at 284 (quoting *Ross*, 203 N.E.2d at 118). In light of *Pendrey* and its progeny, the Court rejects Plaintiff's argument that the decision in *In re Kia* necessitates denial of Kia's Motion to Dismiss herein.[4]

---

[4] Although not cited by either party, the Court notes that, on November 17, 2023, the *In re Kia* MDL court issued a separate decision denying Kia's and Hyundai's motion to dismiss certain claims brought by the so-called "Governmental Entity Plaintiffs." *See In re Kia Hyundai Vehicle Theft Litigation*, 2023 WL 8126870 (C.D. Cal. Nov. 17, 2023). The Governmental Entity (or "GE") Plaintiffs consist of several cities, including the cites of Cincinnati and Cleveland, Ohio. *Id.* at * 2. The GE Plaintiffs filed a Consolidated Complaint in the *In re Kia* MDL litigation on July 28, 2023. *Id.* at * 3. Therein, the GE Plaintiffs assert seventeen causes of action, including (as relevant herein) claims under Ohio state law for common law absolute public nuisance, common law qualified public nuisance, negligence, statutory public nuisance, and civil liability. *Id.* Defendants moved to dismiss these claims under Rule 12(b)(6). As relevant herein, the district

Finally, the Court rejects Plaintiff's argument that dismissal is not appropriate because "whether Defendant's actions proximately caused Plaintiff's injury (i.e., whether the injury was foreseeable from the defendant's conduct) is a question of fact for the jury." (Doc. No. 15 at p. 11.) It is true that the Ohio Supreme Court has "recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact." *Leibreich*, 617 N.E.2d at 1071. *See also Cascone*, 451 N.E.2d at 815; *Bear v. Delaware County, Ohio*, 2016 WL 234848 at * 17 (S.D. Ohio Jan. 20, 2016); *Eastman,* 907 N.E.2d at 780.  However, Ohio courts have repeatedly held that, *as a matter of law*, a thief's reckless operation of a stolen vehicle is not foreseeable and constitutes a new and independent intervening, superseding cause breaking the chain of proximate cause.  *See Pendrey*, 479 N.E.2d at 283; *Tilton*, 1997 WL 816526 at * 2; *Lagowski,* 38 N.E.3d at 459.  On this basis, at least two state appellate court decisions have dismissed a plaintiff's claim at the pleadings stage.  *See Tilton*, 1997 WL 816526 at * 2; *Lagowski,* 38 N.E.3d at 459.  As the Ohio appellate court explained in *Lagowski, supra:*

> *Tilton* and *Pendrey* establish the principle that the theft of a motor vehicle, even when the keys are left in the ignition by the owner, is an intervening superseding cause breaking the chain of proximate cause in a negligence case. *Pendrey* at 29, 479 N.E.2d 283; *Tilton* at *2. Both of these cases were resolved prior to trial, *Tilton* on the pleadings, and *Pendrey* at summary judgment. Unless Appellant alleged facts that

---

court denied defendants' motion with respect to the GE Plaintiffs' Ohio negligence claims. *Id*. at * 4-6.  Applying state law (including Ohio state law), the district court found that the GE Plaintiffs had sufficiently alleged both a duty and proximate causation because it was foreseeable that defendants' decision not to install anti-theft measures in the Kia and Hyundai vehicles at issue could result in theft of those vehicles.  *Id*. at * 6 ("Theft is the very foreseeable conduct that anti-theft devices specifically protect against.").  While not cited or discussed by Plaintiff herein, this Court notes that the California district court's November 17, 2023 decision is likewise distinguishable from the instant case because it dealt only with the foreseeability of *theft* of Kia vehicles – not the further question of the foreseeability of a car thief's subsequent *negligent or reckless operation* of Kia vehicles.  Moreover, the Court notes that the November 17, 2023 *In re Kia* decision does not acknowledge or address the Ohio Supreme Court's decisions in *Ross* and/or *Pendrey, supra*. Finally, the Court notes that the *In re Kia* court recently granted defendants' motion to certify for interlocutory appeal the question of whether, under Ohio law, "a tort duty to protect against third-party criminal conduct can be based solely on the foreseeability of harms—even in the absence of a special relationship." *In re Kia and Hyundai Vehicle Theft Litigation*, 2024 WL 1135736 (C.D. Cal. Jan. 29, 2024).  Thus, until that interlocutory appeal is decided, it is not clear that the district court's denial of the defendants' motion to dismiss the GE Plaintiffs' Ohio negligence claims will stand.

remove his case out of the realm of the rules established in *Pendrey* and *Tilton*, it was appropriate for the court to dismiss the case as a matter of law [pursuant to Ohio Civ. Rule 12(C)].

*Lagowski,* 38 N.E.3d at 459.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff has failed to plausibly allege legal causation, i.e., that the alleged defect in the Kia Sportage that collided with her vehicle in August 2022 was the proximate cause of her injury. Plaintiff's sole claim, Count One of the First Amended Complaint, is therefore subject to dismissal as a matter of law.

### 2.   Factual Causation

Although not necessary to resolution of Kia's Motion to Dismiss, the Court also briefly addresses Kia's argument that Plaintiff failed to plausibly allege that the design of the Kia Sportage involved in the August 2022 collision was a "cause-in-fact" of her injuries.

"Causation in product liability cases consists of two components: (1) direct cause 'in fact' or 'but for' cause; and (2) proximate or legal cause." *American Winds Flight Academy*, 2010 WL 3783136 at * 8. *See also Eastman*, 907 N.E.2d at 780. Regarding the former, Ohio courts have explained that "'a defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct." *Eastman*, 907 N.E.2d at 780 (quoting *Anderson v. St. Francis–St. George Hosp., Inc*., 671 N.E.2d 225, 227 (Ohio 1996)). *See also Aldridge v. Reckart Equip. Co*., 2006 WL 2716696 at * 24 (Ohio App. 4th Dist. Sept. 19, 2006).

Here, Kia maintains that dismissal is warranted because "Plaintiff alleges no facts plausibly suggesting that her injury 'would not have occurred but for' the Kia Sportage's design." (Doc. No.

13 at p. 5.)  Specifically, Kia argues that Plaintiff fails to allege any facts from which the Court could infer that an engine immobilizer would have thwarted the theft that resulted in injuries to Plaintiff. (*Id*.)  Nor, according to Kia, does Plaintiff allege that "the thief who injured her was participating in the 'Kia challenge,' that he was specifically targeting Kias, or that he lacked the wherewithal to steal other vehicles with the alternative designs that she advocates for." (*Id*.)  Thus, Kia asserts that Plaintiff's claim is subject to dismissal because she failed to plausibly allege "factual causation." (*Id*.)

Plaintiff fails to acknowledge or address Kia's arguments on this issue at any point in her Brief in Opposition.  (Doc. No. 15.)

The Court deems Plaintiff to have waived any opposition to Kia's argument that Plaintiff failed to plausibly allege that the design of the Kia Sportage involved in the August 2022 collision was a "cause-in-fact" of her injuries.  It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived opposition.  *See, e.g., Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived).  *See also Kuhlman v. City of Clevelan*d, 2023 WL 2652585 at * 11 (N.D. Ohio March 23, 2023) (finding that, by failing to respond to defendant's motion to dismiss, plaintiff "waived any argument in opposition to the City's argument that plaintiff's state law claims are barred"); *Selou v. Integrity Sol. Servs., Inc.,* 2016 WL 612756 at *3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims.").

31

Here, despite having every opportunity to respond to Kia's argument that Plaintiff failed to plausibly allege "but for" (or factual) causation, Plaintiffs failed to do so. The Court, therefore, deems Plaintiffs to have waived any opposition with respect to this issue.  Moreover, upon careful review of the Amended Complaint, the Court agrees with Kia that Plaintiff failed to include any allegations that the thief who stole the Kia Sportage involved in the August 2022 collision was participating in the "Kia challenge" and/or otherwise specifically targeting Kia vehicles because of the alleged failure of Kia to install anti-theft safety measures.  Nor do there appear to be any factual allegations that the thief who stole the Kia Sportage at issue herein was unable or unwilling to steal other vehicles that did include the anti-theft measures that Plaintiff alleges are required by FMVSS 114.

Accordingly, and in the absence of any meaningful argument to the contrary, the Court finds that dismissal is warranted for the additional reason that Plaintiff failed to plausibly allege that the design of the Kia Sportage involved in the August 2022 collision was a "but for" or "cause-in-fact" of her injuries.

## V.      Conclusion

For the foregoing reasons, Defendant's Motion for Judicial Notice (Doc. No. 14) is GRANTED to the limited extent set forth herein.  Defendant's Motion to Dismiss (Doc. No. 13) is GRANTED.

**IT IS SO ORDERED.**


  *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  March 28, 2024                 U. S. DISTRICT JUDGE

32